**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **NANCY SCHULTZ**, | Case No. |
| and | Judge |
| **ROBERT KLEIN**, | <u>**COMPLAINT FOR DAMAGES**</u> |
| Plaintiffs, | <u>**DEMAND FOR JURY TRIAL**</u> |
| v. | |
| **NATIONSTAR MORTGAGE LLC**<br>**d/b/a RIGHTPATH SERVICING**, | |
| and | |
| **COMMUNITY LOAN SERVICING, LLC**, | |
| and | |
| **JPMORGAN CHASE BANK, N.A.**, | |
| Defendants. | |

Plaintiffs Nancy Schultz and Robert Klein, through counsel, for their *Complaint for Damages* against Defendants Nationstar Mortgage LLC d/b/a RightPath Servicing, Community Loan Servicing, LLC, and JPMorgan Chase Bank, N.A., state as follows:

<u>**PARTIES, JURISDICTION, AND VENUE**</u>

1.      Plaintiffs Nancy Schultz ("Schultz") and Robert Klein ("Klein") (collectively, "Plaintiffs") are the owners of residential real property, located at and commonly known as 829 Echo Ln., Glenview, IL 60025 (the "Home").

2.      Plaintiffs currently maintain the Home as their primary, principal residence, and have so maintained the Home for all times relevant to the allegations of the Complaint.

3.     Defendant Nationstar Mortgage LLC d/b/a RightPath Servicing ("RightPath") is a foreign limited liability company organized under the laws of the State of Delaware, with its principal place of business located at 8950 Cypress Waters Blvd., Dallas, TX 75019.

4.     RightPath is the current servicer of a note executed by Plaintiffs (the "Note") and of a mortgage on the Home that secures the Note (the "Mortgage") (collectively, the "Loan").

5.     RightPath has been the servicer of the Loan since June 1, 2022.

6.     Defendant Community Loan Servicing, LLC ("CLS") is a foreign limited liability company organized under the laws of the State of Delaware, with its principal place of business located at 4425 Ponce De Leon Blvd., Ste. 300, Coral Gables, FL 33146.

7.     CLS is the prior servicer of the Loan from approximately August 1, 2021 to May 31, 2022.

8.     Defendant JPMorgan Chase Bank, N.A. ("Chase") is a federally-chartered national bank that is organized and exists under the National Banking Act.

9.     Chase is the prior servicer of the Loan until transferring servicing to CLS effective August 1, 2021.

10.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 as this action arises under the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA) and the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq.* (RESPA).

11.     This Court has supplemental jurisdiction to hear any state law claims that are plead herein or that may subsequently arise pursuant to 28 U.S.C. § 1367.

12.     Venue lies in this District pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.

## SUMMARY OF CLAIMS

13.    This action is filed to enforce statutory provisions of RESPA, as well as regulations promulgated by the Consumer Financial Protection Bureau (CFPB) and that became effective on January 10, 2014, specifically, 12 C.F.R. § 1024.1, *et seq.* ("Regulation X").

14.    In January 2013, the CFPB issued a number of final rules concerning mortgage markets in the United States, pursuant to the DFA, Public Law No. 111-203, 124 Stat. 1376 (2010).

15.    Specifically, on January 17, 2013, the CFPB issued the Real Estate Settlement Procedures Act Mortgage Servicing Final Rules, 78 Fed. Reg. 10695 (Regulation X) (February 14, 2013), which became effective on January 10, 2014.

16.    Plaintiffs assert claims for relief against RightPath and CLS (collectively, "Defendants") for violations of the specific rules under RESPA and Regulation X, as set forth, *infra*.

17.    Defendants are each a mortgage servicer as defined by RESPA and Regulation X. 12 U.S.C. § 2605(i)(2); 12 C.F.R. § 1024.2(b).

18.    The Loan is a "federally related mortgage loan" as defined by RESPA and Regulation X. 12 U.S.C. § 2602(1); 12 C.F.R. § 1024.2(b).

19.    The Loan is not a "reverse mortgage transaction" as defined by RESPA and Regulation X. 12 C.F.R. § 1024.31; *see* 12 C.F.R. § 1026.33(a) (Regulation Z).

20.    Mortgage servicers are prohibited from failing "to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties." 12 U.S.C. § 2605(k)(1)(C).

21.     Mortgage servicers are prohibited from failing "to comply with any other obligation found by the [CFPB], by regulation, to be appropriate to carry out the consumer protection purposes of [RESPA]." 12 U.S.C. § 2605(k)(1)(E).

22.     Plaintiffs have a private right of action under RESPA and Regulation X pursuant to 12 U.S.C. § 2605(f) for the claimed violations and such action provides for remedies including actual damages, statutory damages, and attorneys' fees and costs.

23.     Plaintiffs also assert claims against Defendants for violations of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1 et seq., which entitles Plaintiffs to recover actual damages, attorneys' fees and costs, and punitive damages.

## **FACTUAL BACKGROUND**

24.     On December 19, 2012, Plaintiffs obtained the Loan from non-party North Shore Community Bank & Trust Company ("North Shore").

25.     On March 8, 2013, Plaintiffs obtained a revolving line of credit secured by a mortgage with North Shore (the "HELOC").

26.     Dealing with hardship brought on by the COVID-19 pandemic, Plaintiffs entered into a Pandemic Forbearance Plan with Chase in 2020.

27.     Chase sent correspondence offering to defer the forborne amounts as of March 12, 2021, totaling $21,435.96, until the maturity of the Loan. A copy of this correspondence is attached as **Exhibit 1**.

28.     On or about April 9, 2021, Chase, without providing instructions to Plaintiffs to decline the deferral, deferred the amounts due and owing through the April 1, 2021 payment. A copy of this correspondence is attached as **Exhibit 2**.

29.     Chase thereafter extended the forbearance term for the Loan. On or about June 7, 2021, Chase sent correspondence offering to defer the forborne amounts through the July 1, 2021 payment, meaning that the Loan would have been due and owing for the August 1, 2021 payment. A copy of this correspondence is attached as **Exhibit 3**.

30.     Plaintiffs accepted this offer and fully expected all outstanding payments due and owing through the July 1, 2021 payment to be deferred until the maturity of the Loan, as pursuant to the assurances and promises issued by Chase.

31.     On or about August 1, 2021, servicing of the Loan transferred from Chase to CLS, whereafter CLS asserted the Loan to be due and owing for the May 1, 2021 payment rather than the August 1, 2021 payment.

32.     When Chase serviced the Loan, it was not escrowed for the purposes of taxes and insurance as it was mutually agreed as such.

33.     Plaintiffs have always timely remitted the amounts due and owing for their taxes and insurance and, as discussed in more detail below, have effectively been double-charged for such amounts due to the actions of CLS and RightPath thereafter.

34.     As of September 2021, neither the hazard insurance premium nor the Loan's property taxes were past due.

35.     Despite Plaintiffs being fully current on their taxes and insurance, on or about September 23, 2021 and September 27, 2021, CLS, without notice to Plaintiffs, remitted funds for the payment of the their hazard insurance premium in the amount of $1,741.12 and to the taxing authority for Cook County in the amount of $6,117.96 and unilaterally and without notice imposed an escrow account for the Loan.

36.     When Plaintiffs attempted to pay their property taxes in September 2021, they were told that the taxes had already been paid and discovered that CLS had established the improper escrow account.

37.     RightPath has sporadically and seemingly without consistency or reason, randomly implemented escrow payments upon Plaintiffs' monthly payment obligations, specifically in and for the months of December 2021, July 2022, and December 2022.

38.     Plaintiffs began to remit their monthly payments to CLS beginning in and for December 2021.

39.     While this payment should have been applied in satisfaction of the payment due and owing for August 1, 2021, it was instead improperly applied to the May 1, 2021 payment.

40.     This pattern continued throughout the remainder of CLS's servicing and RightPath continued to misapply the payments as such.

41.     RightPath has continued in the steps of CLS and continued to demand amounts due and owing for the improperly initiated escrow account and for amounts already remitted by Plaintiffs for taxes and insurance.

42.     As RightPath has failed to properly apply and/or credit any payments remitted by Plaintiffs since the payment remitted for December 2021 in accordance with the terms of the payment deferral through the July 1, 2021 payment as promised by Chase, each such payment has been misapplied and/or miscredited to the Loan.

43.     Moreover, due to such erroneous acts, CLS and RightPath have improperly claimed that the Loan is due and owing for three (3) months further in arrears than is proper.

44.     Plaintiffs attempted to prepare a reinstatement payment for the Loan which was made considerably more difficult due to Defendants' actions. This is especially so considering that

the taxes and insurance have been overpaid and Plaintiffs have been unable or delayed in obtaining

some of the refunds for the overpayments because such overpayments were issued by CLS and/or

RightPath and the funds cannot be returned to Plaintiffs.

45.     To the best of Plaintiffs' knowledge, CLS and RightPath have not taken any steps

to mitigate their erroneous conduct or the harm done to Plaintiffs by seeking refunds for or

otherwise accounting for any such overpayments and RightPath continues to demand the entire

amounts due for taxes and insurance.

46.     On or about June 15, 2022, Plaintiffs contacted RightPath in an attempt to correct

the errors with the Loan's accounting. Although RightPath promised to contact Plaintiffs within

five to seven business days, RightPath failed to do so.

47.     When Plaintiffs received no responses from RightPath, they reached out on

multiple occasions to their Loan Specialist, Angel Sanchez, who failed to help Plaintiffs in any

way. Plaintiffs would be subjected to long hold times, frequent call disconnections, and seemingly

endless transfers to different employees of RightPath. RightPath's employees could not or would

not help Plaintiffs and supplied Plaintiffs contradictory information, sometimes within the same

conversation.

48.     During this time, Plaintiffs were informed that foreclosure proceedings may be

commenced as early as July 31, 2022.

49.     On or about July 6, 2022, Plaintiffs sent a qualified written request pursuant to 12

U.S.C. § 2605(e) (the "QWR") to RightPath at the address designated by RightPath for receipt of

qualified written requests, requests for information, and notices of error pursuant to 12 C.F.R. §§

1024.36(b) and 1024.35(c) (the "Designated Address"): A copy of the QWR is attached as **Exhibit**

**4**.

50.     RightPath received the QWR at the Designated Address on July 12, 2022.

51.     Through the QWR, Plaintiffs informed RightPath in writing of the accounting issues with the Loan, namely that Chase and CLS failed to properly implement and/or honor the entire forbearance period, CLS and RightPath failed to properly credit and/or apply Plaintiffs' monthly payments, and CLS had improperly established an escrow account. *See* Exhibit 4.

52.     Plaintiffs provided proof to RightPath that their taxes and insurance were current and that they intended to take steps to request overpayment refunds, which existed as credits with their insurance carrier and Cook County and assign those refunds to RightPath to assist RightPath in correcting CLS's error and RightPath's continuation of that error. *See* Exhibit 4.

53.     In turn, Plaintiffs requested that RightPath honor the entire forbearance period, remove the escrow account, remove any improper fees assessed to the Loan, and work with Plaintiffs to obtain the escrow refunds and remove negative credit information. *See* Exhibit 4.

54.     Since Plaintiffs were under the threat of an improper foreclosure action, on or about July 22, 2022, Plaintiffs also submitted a consumer complaint against RightPath to the CFPB with the same concerns as the QWR.

55.     On or about August 15, 2022, RightPath sent Plaintiffs a response to the QWR (the "QWR Response"). A copy of the cover pages of the QWR Response is attached as **Exhibit 5**.

56.     The QWR Response fails to acknowledge that Chase offered, and Plaintiffs accepted, the forbearance extension, and wrongfully claimed that the Loan was contractually due for the May 1, 2021 payment. *See* Exhibit 5.

57.     The QWR Response claims that CLS reviewed the Loan for a modification in September 2021 and the Loan was impounded for escrow due to the anticipated modification but refused to remove the escrow account. *See* Exhibit 5.

58.     The QWR Response wholly ignores Plaintiffs concerns about the escrow overpayments. *See* Exhibit 5.

59.     In November 2022, Plaintiffs engaged counsel for representation to request information relating to the Loan and to investigate RightPath's failure to correct the numerous errors with the Loan's accounting.

60.     On November 11, 2022, Plaintiffs, through counsel, sent the following pieces of correspondence, all classified as requests for information pursuant to 12 C.F.R. § 1024.36, to RightPath at the Designated Address:

> a.  Correspondence captioned "Request for Information Pursuant to 12 C.F.R. § 1024.36 including a request for a payoff statement pursuant to 12 C.F.R. § 1026.36(c)(3)" seeking information concerning the Loan, specifically an itemized payoff statement and the name, address, and contact information for the current owner or assignee, master servicer, and current servicer of the Loan ("RFI #1"); and

> b.  Correspondence captioned "Request for Information Pursuant to 12 C.F.R. § 1024.36" seeking additional information concerning the Loan, including a transaction history of the Loan, escrow analyses, and information related to loss mitigation, among other items ("RFI #2").

Copies of RFI #1 and RFI #2 are attached as **Exhibit 6**.

61.     On or about December 6, 2022, Bennett, through counsel, sent a notice of error pursuant to 12 C.F.R. § 1024.35 ("NOE #1") to RightPath at Designated Address. A copy of NOE #1 and tracking information evidencing delivery of NOE #1 is attached as **Exhibit 7**.

62.     Enclosed with NOE #1 was a copy of the letter Chase sent to Plaintiffs on or about June 7, 2021, wherein Chase offered to extend the forbearance term for the Loan through the July 1, 2021 payment. *See* Exhibit 7.

63.     RightPath received NOE #1 at the Designated Address on December 16, 2022. *See* Exhibit 7.

64.     Through NOE #1, Plaintiffs asserted that RightPath refused to properly implement the forbearance, failed to properly apply their monthly payments, and assessed improper charges to the Loan. *See* Exhibit 7.

65.     On or about January 12, 2023, RightPath sent Plaintiffs a response to NOE #1 (the "NOE #1 Response"). A copy of the cover pages of the NOE #1 Response is attached as **Exhibit 8**.

66.     In the NOE #1 Response, RightPath stated:

> JPMorgan Chase Bank, N.A. ("Chase") records indicate that a payment deferral was processed in April 2021, which brought the loan account due for the May 1, 2021, monthly installment. Their records show that when the loan account was transferred from Chase to Community, it was due for the May 1, 2021, monthly installment. Please be informed that we are unable to speak to the correspondence that Chase issued on July 12, 2021, as we were not a party to the servicing of the loan at that time; however, we are required to abide by the guidelines set forth by the investor/insurer of the loan.

*See* Exhibit 8.

67.     RightPath also indicated that its investigation consisted of nothing more than a review of Chase and CLS's servicing records. *See* Exhibit 8.

68.     On January 11, 2023, Plaintiffs, through counsel, sent a notice of error pursuant to 12 C.F.R. § 1024.35 ("NOE #2") to RightPath at the Designated Address. A copy of NOE #2 and tracking information evidencing delivery of NOE #2 is attached as **Exhibit 9**.

69. RightPath received NOE #2 at the Designated Address on January 20, 2023. *See* Exhibit 9.

70. Through NOE #2, Plaintiffs asserted that RightPath imposed improper fees and/or charges to the Loan by continuing to maintain an improperly initiated escrow account and demanding amounts for amounts already remitted by Plaintiffs for taxes and insurance. *See* Exhibit 9.

71. On or about February 9, 2023, RightPath sent Plaintiffs a response to NOE #2 (the "NOE #2 Response"). A copy of the cover pages of the NOE #2 Response is attached as **Exhibit 10**.

72. In the NOE #2 Response, RightPath admits that CLS established the escrow account in error. *See* Exhibit 10.

73. Despite this admission, RightPath claimed that all amounts wrongfully advanced on Plaintiffs' behalf must be repaid by Plaintiffs and advised Plaintiffs that "funds to offset the current escrow deficit can be remitted directly to RightPath Servicing." *See* Exhibit 10.

74. The NOE #2 Response claims that RightPath converted the Loan back to non-escrow, however, Plaintiffs' mortgage statements clearly show that RightPath is still demanding monthly payments in the amount of $1,486.64 for escrow amounts. A copy of RightPath's Mortgage Loan Statement dated March 13, 2023 is attached as **Exhibit 11**.

75. RightPath refused to remove improperly assessed fees and charges and correct its improper negative credit reporting of the Loan. *See* Exhibit 10.

76. On or about March 21, 2023, despite receipt of the QWR, NOE #1, and NOE #2, RightPath sent a letter to Plaintiffs demanding they pay delinquent property taxes and threatening

to "establish an irrevocable escrow account". A copy of the March 21, 2023 letter is attached as **Exhibit 12**.

77.     However, the amount demanded by the March 21, 2023 letter is not delinquent property taxes but actually an overpayment that is being held by Cook County.

78.     On or about March 24, 2023, Plaintiffs were required to liquidate securities in order to pay off the HELOC because RightPath would not provide a statement that it was not charging escrow.

## IMPACT AND DAMAGES

79.     With RightPath failing to take any responsibility to correct the numerous errors committed by Chase and CLS, errors which have been continued by RightPath, Plaintiffs have been forced to file the instant matter.

80.     Defendants' improper actions caused Plaintiff to suffer from actual and proximate damages including, but not limited to:

    a.   Improper fees and charges imposed on the Loan, the collection of such fees, including any late fees and other default servicing related fees for which Plaintiffs are personally obligated or which otherwise negatively impacts any equity in the Home to which they are entitled;

    b.   Legal fees, costs, and expenses to submit the RFIs, NOE #1, and NOE #2 to RightPath in a good faith attempt to obtain information to ascertain the nature of the problems at hand and to otherwise amicably resolve this matter, or to have RightPath mitigate the harm caused to Plaintiffs to which they did not receive a proper or adequate responses;

c. The value of securities liquidated in order to pay off the HELOC, which could have been avoided if RightPath had provided Plaintiffs with a statement showing that it removed the improperly established escrow account;

d. Severe emotional distress driven by Defendants' actions in failing to properly implement and/or acknowledge the forbearance extension, establishing and maintaining the improper escrow account, demanding and collecting improper amounts from Plaintiffs, assessing improper fees to the Loan, and RightPath's subsequent inability to correct the Loan's errors and threats of foreclosure, which has resulted in frustration, loss of sleep, anxiety, depression, embarrassment, and other significant emotional distress.

## **PATTERN AND PRACTICE OF RIGHTPATH'S VIOLATIONS OF RESPA AND REGULATION X**

81. RightPath's actions are part of a pattern and practice of behavior in violation of Plaintiffs' rights and in abdication and contravention of RightPath's obligations under the mortgage servicing regulations set forth in Regulation X of RESPA.

82. RightPath has numerous consumer complaints lodged against it nationally on the CFPB's consumer complaint database. Each such complaint is filed and cataloged in the CFPB's publicly accessible online database which can be accessed at the following link: http://www.consumerfinance.gov/data-research/consumer-complaints.

83. Plaintiffs have reviewed the CFPB's consumer complaint database and have identified narratives asserting that RightPath engaged in similar conduct against other borrowers. In particular, Plaintiffs have reviewed the fifteen (15) consumer complaints attached hereto and identified as **Group Exhibit 13**. The date, details, and a narrative disclosed by the consumer is set

forth in each complaint. The narrative complaints show conduct which demonstrates that RightPath has engaged in a pattern or practice of violating RESPA with respect to other borrowers.

**COUNT ONE: AGAINST RIGHTPATH**
**VIOLATIONS OF RESPA, 12 C.F.R. § 1024.35 AND 12 U.S.C. § 2605**

84.     Plaintiffs restate and incorporate all of the allegations contained in paragraphs 1 through 83 in their entirety, as if fully rewritten herein.

85.     "A servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred." 12 C.F.R. § 1024.35(a).

86.     "A qualified written request that asserts an error relating to the servicing of a mortgage loan is a notice of error for purposes of this section, and a servicer must comply with all requirements applicable to a notice of error with respect to such qualified written request." 12 C.F.R. § 1024.35(a).

87.     Comment 1 of the CFPB's Official Interpretations of 12 C.F.R. § 1024.35(a) provides that "[a] notice of error is submitted by a borrower if the notice of error is submitted by an agent of the borrower." Supplement I to Part 1024.

88.     A servicer must respond to a notice of error by either:

(A)     Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or

(B)     Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied

> upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

12 C.F.R. § 1024.35(e)(1)(i).

89.     A servicer must respond to a notice of error in compliance with 12 C.F.R. § 1024.35(e)(1):

> (A)   Not later than seven days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the notice of error for errors asserted under paragraph (b)(6) of this section.
>
> (B)   Prior to the date of a foreclosure sale or within 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the notice of error, whichever is earlier, for errors asserted under paragraphs (b)(9) and (10) of this section. (C) For all other asserted errors, not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the applicable notice of error.

12 C.F.R. § 1024.35(e)(3)(i).

90.     "A servicer of a federally related mortgage shall not...fail to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties." 12 U.S.C. § 2605(k)(1)(C).

91.     A servicer of a federally related mortgage shall not "fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter." 12 U.S.C. § 2605(k)(1)(E).

**(The QWR)**

92.     The QWR constitutes a qualified written request as defined by 12 C.F.R. § 1024.31 as it is a written notice from Plaintiffs that include their names, mortgage loan account number, and property address and asserts errors that they believed to have occurred. *See* Exhibit 4.

93.     The QWR constitutes a notice of error as defined by 12 C.F.R. § 1024.35(a) because it asserts errors relating to the servicing of a mortgage loan. *See* Exhibit 4.

94.     RightPath received the QWR at the Designated Address on July 12, 2022.

95.     Through the QWR, Plaintiffs informed RightPath in writing of the accounting issues with the Loan, namely that Chase and CLS failed to properly implement and/or honor the entire forbearance period, CLS and RightPath failed to properly credit and/or apply Plaintiffs' monthly payments, and CLS had improperly established an escrow account. *See* Exhibit 4.

96.     On or about August 15, 2022, RightPath sent Plaintiffs the QWR Response. *See* Exhibit 5.

97.     The QWR Response fails to acknowledge that Chase offered, and Plaintiffs accepted, the forbearance extension, and wrongfully claimed that the Loan was contractually due for the May 1, 2021 payment. *See* Exhibit 5.

98.     The QWR Response claims that CLS reviewed the Loan for a modification in September 2021 and the Loan was impounded for escrow due to the anticipated modification but refused to remove the escrow account. *See* Exhibit 5.

99.     The QWR Response wholly ignores Plaintiffs concerns about the escrow overpayments. *See* Exhibit 5.

100.    RightPath failed to fulfill its obligations as to 12 C.F.R. § 1024.35(e)(1)(i)(A) as RightPath failed to admit that any errors occurred as alleged in the QWR.

101.    RightPath did not fulfill its obligations as to 12 C.F.R. § 1024.35(e)(1)(i)(B), because, as shown by the preceding paragraphs, it is clear that RightPath did not perform a reasonable investigation into the errors alleged through the QWR.

**(NOE #1)**

102.    NOE #1 constitutes a notice of error as defined by 12 C.F.R. § 1024.35(a) as it is a written notice from Plaintiffs that include their names, mortgage loan account number, and property address and asserts errors that they believed to have occurred. *See* Exhibit 7.

103.    RightPath received NOE #1 at the Designated Address on December 16, 2022. *See* Exhibit 7.

104.    Through NOE #1, Plaintiffs asserted that RightPath refused to properly implement the forbearance, failed to properly apply their monthly payments, and assessed improper charges to the Loan. *See* Exhibit 7.

105.    Enclosed with NOE #1 was a copy of the letter Chase sent to Plaintiffs on or about June 7, 2021, wherein Chase offered to extend the forbearance term for the Loan through the July 1, 2021 payment. *See* Exhibit 7.

106.    On or about January 12, 2023, RightPath sent Plaintiffs the NOE #1 Response. *See* Exhibit 7.

107.    The NOE #1 Response fails to consider that Plaintiffs provided evidence that they accepted Chase's offer of a forbearance extension and RightPath otherwise failed to take any responsibility to correct the Loan's errors. *See* Exhibit 7.

108.    RightPath failed to fulfill its obligations as to 12 C.F.R. § 1024.35(e)(1)(i)(A) as RightPath failed to admit that any errors occurred as alleged in NOE #1.

109.     RightPath did not fulfill its obligations as to 12 C.F.R. § 1024.35(e)(1)(i)(B), as it is clear that RightPath did not perform a reasonable investigation into the errors alleged through NOE #1, because RightPath admitted that it did nothing more than review Chase and CLS's incomplete servicing record and RightPath dismissed Chase's offer to extend the forbearance period attached to NOE #1.

**(NOE #2)**

110.     NOE #2 constitutes a notice of error as defined by 12 C.F.R. § 1024.35(a) as it is a written notice from Plaintiffs that include their names, mortgage loan account number, and property address and asserts errors that they believed to have occurred. *See* Exhibit 9.

111.     RightPath received NOE #2 at the Designated Address on January 20, 2023. *See* Exhibit 9.

112.     Through NOE #2, Plaintiffs asserted that RightPath imposed improper fees and/or charges to the Loan by continuing to maintain an improperly initiated escrow account and demanding amounts for amounts already remitted by Plaintiffs for taxes and insurance. *See* Exhibit 9.

113.     On or about February 9, 2023, RightPath sent Plaintiffs the NOE #2 Response. *See* Exhibit 10.

114.     In the NOE #2 Response, RightPath admits that CLS established the escrow account in error, but RightPath ultimately refused to remove the escrow account, despite claiming that it converted the Loan back to non-escrow. *See* Exhibit 10.

115.     RightPath also refused to remove improperly assessed fees and charges and correct its improper negative credit reporting of the Loan. *See* Exhibit 10.

116.    RightPath failed to fulfill its obligations as to 12 C.F.R. § 1024.35(e)(1)(i)(A) as RightPath failed to admit that any errors occurred as alleged in NOE #2.

117.    RightPath did not fulfill its obligations as to 12 C.F.R. § 1024.35(e)(1)(i)(B), because, as shown by the preceding paragraphs, it is clear that RightPath did not perform a reasonable investigation into the errors alleged through NOE #2.

**(Plaintiffs' Damages)**

118.    RightPath's failure to properly respond to the QWR, NOE #1, and NOE #2 by failing to correct its errors or to otherwise perform a reasonable investigation into and otherwise properly respond to the errors alleged by Plaintiffs constitutes violations of 12 C.F.R. § 1024.35(e) and 12 U.S.C. § 2605(k) and has caused Plaintiffs to suffer actual damages as detailed, *supra*, at ¶ 80.

119.    Further, RightPath's failure to comply with 12 C.F.R. § 1024.35(e) and 12 U.S.C. § 2605(k) caused Plaintiffs' attorneys' fees and costs associated with the preparation of the QWR, NOE #1, and NOE #2 to metamorphose into damages. *Marais v. Chase Home Fin., LLC* (Marais II), 24 F. Supp. 3d 712, 726-728 (S.D. Ohio 2014); *see Marais v. Chase Home Fin. LLC* (Marais I), 736 F.3d 711, 721 (6th Cir. 2013).

120.    RightPath's actions are part of a pattern and practice of behavior in conscious disregard for Plaintiffs' rights and in abdication of RightPath's obligations under RESPA and Regulation X.

121.    As a result of RightPath's actions, RightPath is liable to Plaintiffs for actual damages and statutory damages, as further described, *supra*. 12 U.S.C. § 2605(f)(1).

122.    Additionally, Plaintiffs request reasonable attorneys' fees and costs incurred in filing and maintaining this action. 12 U.S.C. § 2605(f)(3).

**WHEREFORE**, Plaintiffs Nancy Schultz and Robert Klein pray that this Court enter an order granting judgment against Defendant Nationstar Mortgage LLC d/b/a RightPath Servicing, for the following:

A.    Actual damages in an amount to be determined at trial;

B.    Statutory damages of Two Thousand Dollars ($2,000.00) for each violation of Regulation X for each borrower;

C.    Reasonable attorneys' fees and costs; and

D.    Such other relief which this Court may deem appropriate.

### COUNT TWO: AGAINST RIGHTPATH
### VIOLATIONS OF THE ICFA, 815 ILCS 505/1, *ET SEQ*.

123.    Plaintiffs restate and incorporate all of the allegations contained in paragraphs 1 through 83 in their entirety, as if fully rewritten herein.

124.    815 ILCS 505/2 states, in relevant part:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact...in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

125.    "Any person who suffers actual damage as a result of a violation of this Act committed by any other person may bring an action against such person. The court, in its discretion, may award actual economic damages or any other relief which the court deems proper." 815 ILCS 505/10a.

126. ICFA allows for an award of punitive damages for actions that are either fraudulent, willful, or grossly negligent as to indicate a wanton disregard of the rights of others. *See Martin v. Heinold Commodities*, 643 N.E.2d 734, 756-757 (Ill. 1994).

127. RightPath's conduct, as detailed, *supra*, constitutes unfair conduct under ICFA. RightPath violated the ICFA by engaging in unfair or deceptive acts or practices by:

a. Failing to honor the promised payment deferral through the July 1, 2021 payment;

b. Misapplying and/or miscrediting Plaintiffs' payments;

c. Imposing improper fees and charges to the Loan;

d. Improperly remitting payments for taxes and insurance;

e. Failing to work with Plaintiffs to obtain their mortgage servicers' overpayments made towards taxes and insurance;

f. Falsely representing that it would remove the improperly established escrow account;

g. Refusing to remove the Loan's improperly established escrow account;

h. Collecting and attempting to collect improper amounts for escrow items after claiming that it would remove the improperly established escrow account;

i. Failing to properly investigate Plaintiffs' concerns as stated in the QWR, NOE #1, and NOE #2;

j. Failing to timely and properly correct the errors asserted through the QWR, NOE #1, and NOE #2; and

k. Sending the March 21, 2023 letter instead of working with Plaintiffs to secure the overpayment of property taxes.

128.    RightPath's conduct occurred during the course of trade or commerce.

129.    RightPath, through its conduct, intended that Plaintiffs would rely on its unfair or deceptive acts or practices concerning the payment deferral, fees and charges assessed to the Loan, and status of the improperly established escrow account so that Plaintiffs would remit payments to RightPath for amounts not due to RightPath.

130.    RightPath's unfair or deceptive acts or practices were immoral, unethical, unscrupulous and oppressive, especially in that RightPath was, at all times relevant, in a position of strength in relation to Plaintiffs.

131.    RightPath owed Plaintiffs a duty of good faith and fair dealing. RightPath owed Plaintiffs a fiduciary duty as servicer. RightPath had discretion with respect to its servicing of the Loan.

132.    RightPath's conduct violates public policy, including RESPA, because, as detailed *supra*, RightPath used unfair or deceptive acts or practices in connection with its servicing of the Loan.

133.    As a result of RightPath's conduct, RightPath is liable to Plaintiffs for actual damages as further alleged, *supra*, at ¶ 80, at as well as reasonable attorneys' fees and costs.

134.    RightPath's conduct shows a pattern of conduct that is at least grossly negligent. Plaintiffs seek punitive damages for RightPath's fraudulent, willful, or grossly negligent conduct. RightPath had three opportunities to correct the errors asserted by Plaintiffs, including an error admitted by RightPath, and wholly ignored its duties as Plaintiffs' loan servicer.

**WHEREFORE**, Plaintiffs Nancy Schultz and Robert Klein pray that this Court enter an order granting judgment against Defendant Nationstar Mortgage LLC d/b/a RightPath Servicing, for the following:

A.      Actual damages in an amount to be determined at trial;

B.      Reasonable attorneys' fees and costs;

C.      Punitive damages; and

D.      Such other relief which this Court may deem appropriate.

### COUNT THREE: AGAINST CLS
### VIOLATIONS OF THE ICFA, 815 ILCS 505/1, *ET SEQ.*

135.    Plaintiffs restate and incorporate all of the allegations contained in paragraphs 1 through 83 in their entirety, as if fully rewritten herein.

136.    815 ILCS 505/2 states, in relevant part:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact...in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

137.    "Any person who suffers actual damage as a result of a violation of this Act committed by any other person may bring an action against such person. The court, in its discretion, may award actual economic damages or any other relief which the court deems proper." 815 ILCS 505/10a.

138.    ICFA allows for an award of punitive damages for actions that are either fraudulent, willful, or grossly negligent as to indicate a wanton disregard of the rights of others. *See Martin*, 643 N.E.2d at 756-757.

139.    CLS's conduct, as detailed, *supra*, constitutes unfair conduct under ICFA. CLS violated the ICFA by engaging in unfair or deceptive acts or practices by::

    a.   Failing to honor the promised payment deferral through the July 1, 2021 payment;

    b.   Misapplying and/or miscrediting Plaintiffs' payments;

    c.   Imposing improper fees and charges to the Loan;

    d.   Improperly establishing an escrow account for the Loan;

    e.   Improperly remitting payments for taxes and insurance; and,

    f.   Collecting and attempting to collect improper amounts for escrow items.

140.    CLS's conduct occurred during the course of trade or commerce.

141.    CLS, through its conduct, intended that Plaintiffs would rely on its unfair or deceptive acts or practices concerning the payment deferral, fees and charges assessed to the Loan, and the improperly established escrow account so that Plaintiffs would remit payment to CLS for amounts not due to CLS.

142.    CLS's unfair and deceptive conduct was immoral, unethical, unscrupulous and oppressive, especially in that CLS was, at all times relevant, in a position of strength in relation to Plaintiffs.

143.    CLS owed Plaintiffs a duty of good faith and fair dealing. CLS owed Plaintiffs a fiduciary duty as servicer. CLS had discretion with respect to its servicing of the Loan.

144.    CLS's conduct violates public policy, because, as detailed, *supra*, CLS used false or deceptive acts or practices in connection with its servicing of the Loan.

145.    As a result of CLS's conduct, CLS is liable to Plaintiffs for actual damages as further alleged, *supra*, at ¶ 80, at as well as reasonable attorneys' fees and costs.

146. CLS's conduct shows a pattern of conduct that is at least grossly negligent, as RightPath has admitted that CLS improperly established the Loan's escrow account. Plaintiffs seek punitive damages for CLS's fraudulent, willful, or grossly negligent conduct.

**WHEREFORE**, Plaintiffs Nancy Schultz and Robert Klein pray that this Court enter an order granting judgment against Defendant Community Loan Servicing, LLC, for the following:

A. Actual damages in an amount to be determined at trial;

B. Reasonable attorneys' fees and costs;

C. Punitive damages; and

D. Such other relief which this Court may deem appropriate.

**COUNT FOUR: AGAINST CHASE**
**VIOLATIONS OF THE ICFA, 815 ILCS 505/1, *ET SEQ*.**

147. Plaintiffs restate and incorporate all of the allegations contained in paragraphs 1 through 83 in their entirety, as if fully rewritten herein.

148. 815 ILCS 505/2 states, in relevant part:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact...in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

149. "Any person who suffers actual damage as a result of a violation of this Act committed by any other person may bring an action against such person. The court, in its discretion, may award actual economic damages or any other relief which the court deems proper." 815 ILCS 505/10a.

150. ICFA allows for an award of punitive damages for actions that are either fraudulent, willful, or grossly negligent as to indicate a wanton disregard of the rights of others. *See Martin*, 643 N.E.2d at 756-757.

151. Chase's conduct, as detailed, *supra*, constitutes unfair conduct under ICFA. Chase violated the ICFA by engaging in unfair or deceptive acts or practices by::

    a. Failing to implement and otherwise honor the promised payment deferral through the July 1, 2021 payment; and

    b. Failing to inform CLS that Plaintiffs have accepted the promised payment deferral and instead transferring an incomplete servicing file to CLS.

152. Chase's conduct occurred during the course of trade or commerce.

153. Chase, through its conduct, intended that Plaintiffs would rely on its unfair or deceptive acts or practices concerning the payment deferral while Chase offloaded the servicing of the Loan, and the problems it created, to CLS.

154. Chase's unfair and deceptive conduct was immoral, unethical, unscrupulous and oppressive, especially in that Chase was, at all times relevant, in a position of strength in relation to Plaintiffs.

155. Chase owed Plaintiffs a duty of good faith and fair dealing. Chase owed Plaintiffs a fiduciary duty as servicer. Chase had discretion with respect to its servicing of the Loan.

156. Chase's conduct violates public policy, because, as detailed, *supra*, Chase used false or deceptive acts or practices in connection with its servicing of the Loan.

157. As a result of Chase's conduct, Chase is liable to Plaintiffs for actual damages as further alleged, *supra*, at ¶ 80, at as well as reasonable attorneys' fees and costs.

158.    Chase's conduct shows a pattern of conduct that is at least grossly negligent, as Chase promised Plaintiffs an extended forbearance period and failed to properly implement the same. Plaintiffs seek punitive damages for Chase's fraudulent, willful, or grossly negligent conduct.

**WHEREFORE**, Plaintiffs Nancy Schultz and Robert Klein pray that this Court enter an order granting judgment against Defendant JPMorgan Chase Bank, N.A., for the following:

A.      Actual damages in an amount to be determined at trial;

B.      Reasonable attorneys' fees and costs;

C.      Punitive damages; and

D.      Such other relief which this Court may deem appropriate.

## <u>JURY DEMAND</u>

Plaintiffs hereby request a trial by jury on all issues.

Respectfully submitted:

*/s/ Marc E. Dann*
Marc E. Dann, Esq. (OH#0039425)
**DANN LAW**
15000 Madison Avenue
Lakewood, Ohio 44107
Phone: 216-373-0539
Fax: 216-373-0536
notices@dannlaw.com

*Counsel for Plaintiffs*
*Nancy Schultz and Robert Klein*